IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**JOE HAND PROMOTIONS, INC.,**

      Plaintiff,

v.

**ROBERT DEAN HOLMES**, individually,
and **RDH Entertainment, LLC.**, d.b.a.,
**BOB'S STEAKS N' SPIRITS,**

      Defendants.

Case No.  2:12-CV-00535-SU

**FINDINGS AND
RECOMMENDATION**

SULLIVAN, United States Magistrate Judge:

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed a complaint against defendants,

Robert Dean Holmes and RDH Entertainment LLC ("RDH"), doing business as Bob's Steaks 'N

Spirits, alleging defendants violated both federal and state law by intercepting and exhibiting a

particular sports broadcast to which Joe Hand was granted exclusive distribution rights. Defendants failed to appear or otherwise respond to summons and complaint within the time frame prescribed by the Federal Rules of Civil Procedure. U.S. District Court Judge Anna Brown denied plaintiff's first motion for default judgment, finding that plaintiff failed to prove it was entitled to relief. After filing an amended complaint, plaintiff again moves for default judgment, seeking compensatory, statutory, and enhanced damages as well as attorneys fees. Defendants have neither appeared nor filed any opposition. For the reasons set forth below, plaintiff's second motion for default judgment should be granted, in part, and denied, in part.

## BACKGROUND

Plaintiff Joe Hand, a commercial distributor of sports and entertainment programming, owned the exclusive nationwide television distribution rights to a live event broadcast entitled "Ultimate Fighting Championship 111: Georges St. Pierre v. Dan Hardy" ("UFC 111"). Am. Compl., at 3-4; 2d Mot. Default J. Ex. 1, at 2 (Hand Aff.). The UFC 111 broadcast encompassed the title fight, St. Pierre v. Hardy; fight commentary; and several under-card matches including Saunders v. Fitch. Am. Compl., at 3-4; 2d Mot. Default J. Ex. 1, at 3 (Hand Aff.). The event aired on March 27, 2010. 2d Mot. Default J. Ex. 1, at 2 (Hand Aff.). In its role as the event's commercial distributor, plaintiff marketed and advertised the sporting event, and transmitted the broadcast to commercial entities who paid for the right to show it at their establishments. Am. Compl., at 4; 2d Mot. Default J. Ex. 1, at 2 (Hand Aff.). To accomplish this, plaintiff entered into sublicense agreements granting exhibition rights to the commercial entities, which included hotels, racetracks, casinos, restaurants, and bars. Am. Compl., at 4. In return for the rights, sublicensees paid fees which varied depending on the capacity of their venues. 2d Mot. Default J. Ex. 1, at 3, 9 (Hand Aff.,

Fee List).

Recently, Joe Hand began a nationwide anti-piracy program. 2d Mot. Default J. Ex. 1, at 2-3 (Hand Aff.). It hired auditors and investigators to detect and identify establishments nationwide that were illegally accessing and airing Joe Hand broadcasts without paying Joe Hand the sublicense fees. 2d Mot. Default J. Ex. 1, at 2-3 (Hand Aff.). On March 27, 2010, an investigator entered Bob's Steaks N' Spirits in Nyssa in eastern Oregon. *Id.* at 3; 2d Mot. Default J. Ex. 2, at 1 (Schell Aff.). He observed that the establishment was airing UFC 111, specifically the Saunders v. Fitch under-card match. *Id.* The establishment had not paid for the right to broadcast UFC 111. 2d Mot. Default J. Ex. 1, at 3 (Hand Aff.). The investigator reported that Bob's Steak 'N Spirits had a capacity of 90-100 people and that about 80 people were present during the portion of the unauthorized broadcast that he witnessed. 2d Mot. Default J. Ex. 2, at 2 (Schell Aff.).

Based on this information, Joe Hand filed a complaint, alleging defendants unlawfully intercepted and exhibited UFC 111 and did so knowingly and "for the purposes of direct or indirect commercial advantage or private financial gain." Compl., at 4-5; Am. Compl., at 5. After defendants failed to appear or respond to the summons or complaint, the Clerk of the Court made an entry of default. Plaintiff moved for default judgment and attorney's fees and costs. Judge Brown denied the motion, finding that plaintiff had failed to establish it was entitled to damages. Opin. & Order, at 5. Joe Hand filed an amended complaint that added factual details. Plaintiff alleges conversion and theft of cable signal in violation of federal communications laws, 47 U.S.C. § 605 and 47 U.S.C. § 553. Am. Compl., at 1. Again, defendants have failed to respond to the complaint or summons, resulting in another entry of default. Plaintiff moves a second time for default judgment. Plaintiff seeks a total of $100,900 in damages from each defendant. 2d Mot. Default J., at 3. Plaintiff also

requests $2,250 in attorney's fees and $712.71 in costs.  *Id.*

## LEGAL STANDARD

After an entry of default against an unresponsive defendant, a court may grant default judgment in the plaintiff's favor and award damages.  Fed. R. Civ. P. 55(b)(2).  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In exercising their discretion, courts may consider the following factors as articulated in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, the non-responding party is deemed to have admitted  the factual allegations against him, with the exception of allegations of damages. Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Thus, the court must accept plaintiff's facts in the complaint as true, but the plaintiff must prove damages.   *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## DISCUSSION

### I.  Whether to Grant Default Judgment

The Court finds that the *Eitel* factors favor granting plaintiff's motion for default judgment on some claims but not all of them.  The Court analyzes each factor as follows.

#### A.  Factor One: Possibility of Prejudice to Plaintiff

The first *Eitel*  factor considers whether the plaintiff will suffer prejudice if the Court denies

default judgment.  Courts have found this factor favors default judgment where the plaintiff's only available legal remedy is the default judgment, and, without such a judgment, plaintiff would be left without any recourse for recovery.  *See, e.g., PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *J & J Sports Prods., Inc. v. Cardoze*, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); *J & J Sports Prods., Inc. v. Machuca*, 2014 WL 1330658, at *3 (E.D. Cal. Apr. 1, 2014); *UBS Fin. Servs., Inc. v. Martin*, 2014 WL 2159280, at *4 (S.D. Cal. May 23, 2014). Here, defendants have not responded to any of the plaintiff's filings.  If the Court were to deny Joe Hand's motion, Joe Hand would be left without remedy or recourse for recovery.  Accordingly, the first factor supports an entry of default judgment.

### B.  Factors Two and Three: The Merits and the Sufficiency of the Complaint

The Court considers factor two: the merits of plaintiff's substantive claims, and factor three: the sufficiency of the complaint together, because they are closely related.  Both factors require that a plaintiff's allegations "state a claim on which the plaintiff may recover." *Pepsico*, 238 F. Supp. at 1175 ( citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).  Plaintiff's original complaint failed to do so.  Consequently, Judge Brown denied plaintiff's first motion for default judgment. Opin. & Order, at 5.   The original complaint alleged that defendants unlawfully broadcast "Ultimate Fighting Championship 111: Georges St. Pierre v. Dan Hardy," but plaintiff supplied supporting evidence that appeared to contradict those allegations.  *Id.* at 4-5; Order on Mot. Supplement, at 3-4. The investigator's affidavit reported only that defendants unlawfully broadcast Saunders v. Fitch, seemingly a different program altogether.  *Id.*; *see* 2d Mot. Default J. Ex. 2, at 1 (Schell Aff.).  Judge Brown noted, "Plaintiff did not define 'under-card bouts' in its Complaint and did not specifically

identify the Fitch v. Saunders fight as being an 'under-card bout' or part of the Program." Order on

Mot. Supplement, at 3. In the amended complaint, Joe Hand clarifies that Saunders v. Fitch was part

of the UFC 111 program to which Joe Hand owned exclusive distribution rights. Am. Compl. 4.[1]

By doing so, plaintiff corrects a fatal flaw in the original complaint. Taking this change into account,

the Court analyzes the merits and sufficiency of each of plaintiff's legal claims.

### (1). Applicability of Sections 605 and 553

Plaintiff alleges liability and seeks damages under two different federal communications

laws, 47 U.S.C. § 605 and 47 U.S.C. § 553. However, after careful review, the Court rejects

plaintiff's application of both statutes to a single act of piracy. Section 553 explicitly prohibits

unauthorized interception of cable television transmissions.[2] 47 U.S.C. 553(a)(1). Section 605, by

its words, prohibits the unauthorized reception, interception, and broadcast of interstate radio

communications. 47 U.S.C. § 605(a).[3] The Ninth Circuit has applied Section 605 to piracy of

---

[1] Among other changes, plaintiff added the following sentence, "Included in the under-card bouts was UFC 111 Saunders v. Fitch which was broadcast as part of the broadcast." Am. Compl. 4.

[2] Specifically, 47 U.S.C. 553(a)(1) states, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[3] Section 605(a) includes the following provision:
No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

satellite television signals, but has not addressed whether it applies to interception of cable transmissions as well. *DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008); *see Joe Hand Promotions, Inc. V. Albright*, 2013 WL 2449500, at *3 (E.D. Cal. June 5, 2013). However, as plaintiff acknowledges, "The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system," and Section 553 applies to cable interception. 2d Mot. Default J. Ex. 3, at 3 (Mem. P. & A.). The Ninth Circuit has not addressed whether the statutes overlap, but five other circuits have done so.[4] Four of them have held that the two statutes are mutually exclusive, with Section 605 applying only to satellite television and Section 553 to cable television piracy. *See Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 176-78 (1st Cir. 2006); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205-06 (3d Cir. 2001); *J & J Sports Prods. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 352-53 (5th Cir. 2014); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996). Only the Second Circuit has held to the contrary. *See Int'l Cablevision v. Sykes*, 75 F.3d 123, 133 (2d Cir.1996). District courts in the Ninth Circuit have largely adopted the majority stance. "A signal pirate violates section 553 if he intercepts a cable signal, [and] he violates

---

[4] The Ninth Circuit recognized but did not resolve the issue. *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 349 n. 1 (9th Cir.1999) It noted:

> There are potentially intricate issues of overlap and distinction between the sections, one of which speaks more to cable television, the other more to satellite television. Neither side has raised any question about which statute applies [to the alleged act of piracy] in the briefs, so we have no occasion to decide which applies, or whether both do.

*Id*.

section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *Albright*, 2013 WL 2449500, at *4; *J & J Sports Prods., Inc. v. Manzano*, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008); *J & J Sports Prods., Inc. v. Ro*, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010); *Cardoze*, 2010 WL 2757106, at *3; *see J & J Sports Prods., Inc. v. Lone Star Cafe & Pub*, 2013 WL 587662, at *1 (W.D. Wash. Feb. 14, 2013).

In situations in which plaintiffs can establish piracy but not the specific method of interception, some district courts have applied Section 605, because it "provides for greater damages and mandates attorney's fees." *J & J Sports Prods., Inc.v. Greathouse*, 2015 WL 717907, (D. Ariz. Feb. 19, 2015); *Kingvision Pay Per View, Ltd. v. Guzman*, 2008 WL 1924988, at *1 (D. Ariz. Apr.30, 2008); *see Kingvision Pay–Per–View. Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1197 n.3 (N.D. Cal. 2000). However, more commonly, courts have applied Section 553, holding that interception of a cable signal is the more likely offense, because "cable boxes are more easily hidden than satellite dishes and more likely to be the source of transmission." *J & J Sports Prods., Inc. v. Basto,* 2011 WL 2197756, at *3 (N.D. Cal. June 6, 2011); *J & J Sports Prods. Inc. v. Man Thi Doan*, 2008 WL 4911223, at *3 (N.D. Cal. 2008); *see J & J Sports Prods. Inc. v. Tsoulouhas*, 2008 WL 5390936, at *2 (W.D. Wash. Dec. 23, 2008) ("Because plaintiff has not made an adequate showing concerning which of the two statutes was violated, the Court will award damages only under the statute with lower limits, namely Section 553"); *see also Cardoze*, 2010 WL 2757106, at *3; *see also Lone Star Cafe*, 2013 WL 587662, at *1.

Since Joe Hand alleges a single act of signal piracy, plaintiff can only recover under one of

the two statutes.[5]   The applicable statute depends on whether defendants intercepted satellite or

cable transmissions of the program.  However, plaintiff offers no allegations or evidence as to the

precise method of piracy.  2d Mot. Default J. Ex. 1, at 3-4 (Hand Aff.); 2d Mot. Default J. Ex. 3, at

4 (Mem. P. & A.).  Plaintiff's investigator did not report observing either a satellite or a cable box.

Following other district courts' well-reasoned approach, the Court applies Section 553.

### (3) Liability Under Section 553

Section 553 prohibits unauthorized interception and receipt of cable programming as well

as the manufacture and distribution of equipment to help others pirate cable transmissions.  47

U.S.C. § 553.  A violation of Section 553 is a strict liability offense that does not require evidence

of intent. *Id*.; *Don King Prods./Kingvision v. Lovato*, 1996 WL 682006, at *3 (N.D. Cal. Nov.15,

1996).  Furthermore, plaintiffs need not furnish direct evidence to establish unlawful interception

of a television broadcast.  *Webb*, 545 F.3d at 844.  "Circumstantial evidence may be sufficiently

persuasive. Signal piracy is by its nature a surreptitious venture and direct evidence of actual

interception may understandably be hard to come by."  *Id.*  The Ninth Circuit has held that a

violation occurs when any portion of a martial arts pay-per-view event is illegally intercepted and

---

[5]  Plaintiff cites a single district court case in support of its argument that the Court
should grant it damages under both statutes.  2d Mot. Default J. Ex. 3, at 7 (Mem. P. & A.)
(citing *Spencer Promotions, Inc. v. 5th Quarter Enterprises Inc.*, 1996 WL 438789, *3 (N.D.
Cal. Feb. 21, 1996).  However, the case, *Spencer Promotions, Inc. v. 5th Quarter Enterprises
Inc.*, is contradicted by numerous more recent cases, which the Court has cited above.
Additionally, that opinion failed to consider the interplay between the two statutes.  *Manzano,*
2008 WL 4542962, at *3; *Man Thi Doan*, 2008 WL 4911223, at *3; *see Spencer*, 1996 WL
438789, at *3.

exhibited, even if it is a preliminary under-card match as opposed to the main bout. *Lake Alice Bar*, 168 F.3d at 349.

In addition to suing an offending business, a plaintiff may sue a defendant owner or operator in his individual capacity for the business's violation of Section 553. However, in order to succeed, the plaintiff must show the individual "had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct." *Joe Hand Promotions, Inc. v. Alvarado*, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011); *see Joe Hand Promotions, Inc. v. Bragg*, 2014 WL 2589242, at *5 (S.D. Cal. June 10, 2014); *J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011). It is not enough for plaintiff to argue that the individual defendant was an owner, operator, or shareholder who profited in some way from the business, plaintiff must demonstrate that the individual was "a moving active conscious force" behind the offense and that he derived a "direct final benefit" from the offense." *Bragg*, 2014 WL 2589242, at *5; *see Walia*, 2011 WL 902245, at *3.

Here, plaintiff presents allegations and evidence that RDH broadcast a UFC 111 under-card match without authorization and that the establishment could not have lawfully aired the program without that authorization. Regarding defendant RDH, plaintiff sufficiently pleads a Section 553 claim that appears to have merit. However, plaintiff fails to state a case against defendant Holmes. Plaintiff's sole allegation against Holmes is that he is "the member, principal, alter ego, officer, director, shareholder, employee, agent, and/or other representative of RDH." Am. Compl., at 3. Plaintiff neither argues nor supplies facts to indicate that Holmes was a moving force behind the

piracy of UFC 111 or that he directly benefitted from the piracy. Plaintiff does not state a claim with any merit against defendant Holmes under Section 553. Thus, although plaintiff alleges RDH and Holmes violated two statutes, plaintiff's facts only support a judgment that RDH violated Section 553. The other claims lack merit.

### (4) Liability for Conversion

As for plaintiff's conversion claim, Oregon law defines the offense as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Cron v. Zimmer,* 296 P.3d 567, 576–77 (Or. Ct. App. 2013), *quoting Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969) (adopting the definition found in Restatement (Second) of Torts § 222A(1) (1965)). The plaintiff need not show an intent to commit conversion, because a defendant "may commit conversion even where that person mistakenly believes that he or she is legally entitled to the property, or otherwise acted in good faith." *Briggs v. Lamvik*, 255 P.3d 518, 524 (Or. Ct. App. 2011)(citations omitted); *see Cron*, 296 P.3d at 577. Although appellate courts do not appear to have addressed the issue, Oregon district courts have interpreted "chattels" to include broadcast licenses as well as certain other legal rights. *See Joe Hand Promotions, Inc. v. Jacobson,* 874 F. Supp. 2d 1010, 1019 (D. Or. 2012) (broadcast license); *Coultas v. Liberty Mut. Fire Ins. Co.*, 2015 WL 2376003, at *4 (D. Or. May 18, 2015) (right to bring lawsuit); *Lyden v. Nike, Inc.*, 2013 WL 5729727 at *4 (D. Or. Oct. 23, 2013) (patent rights). In assessing whether a defendant's interference with a chattel was severe enough to constitute conversion, courts may consider several "important

factors." *Becker v. Pacific Forest Industries, Inc.*, 211 P.3d 284, 287 (Or. Ct. App. 2009). The factors include: the extent and duration of the actor's exercise of dominion or control, the actor's intent to assert a right in fact inconsistent with the other's right of control, the actor's good faith, the extent and duration of the resulting interference with the other's right of control, the harm done to the chattel, and the inconvenience and expense caused to the other. *Id.* District courts have found viable claims for conversion under circumstances very similar to the present case. *See, e.g., Jacobson*, 874 F. Supp. 2d at 1021 (conversion found when defendant broadcast a comparable UFC program without Joe Hand's authorization); *G & G Closed Circuit Events, LLC v. Kim Hung Ho*, 2011 WL 6217598, at *3 (N.D. Cal. Dec. 14, 2011) (default judgment of conversion based on restaurant's unauthorized broadcast of pay-per-view mixed martial arts program); *Joe Hand Promotions, Inc. v. Dang*, 2011 WL 6294289, at *2 (N.D. Cal. Dec. 14, 2011) (cafe's unauthorized broadcast of pay-per-view fight was conversion). In *Joe Hand Promotions, Inc. v. Jacobson*, the Oregon district court explained, "Joe Hand was contractually entitled to determine when, where, and by whom the broadcast signal containing the Program could be displayed to the viewing public. An unauthorized showing of the Program would result in an exercise of dominion or control over the broadcast signal." 874 F. Supp. 2d at 1021.

The Court finds *Jacobson* persuasive. Considering all of the important factors, the Court finds plaintiff has pleaded a sufficient conversion claim against RDH and it has merit. However, as for defendant Holmes, plaintiff fails to allege any facts that implicate him personally in the conversion. Plaintiff makes no argument that Holmes directly oversaw or involved himself in any

way in the wrongful activity. Moreover, Holmes's ownership of RDH does not, on its own, subject him to personal liability, because the entity is a limited liability corporation.[6] Thus, plaintiff successfully pleads a conversion claim against RDH but not against Holmes. In sum, the second and third *Eitel* factors, the merits of plaintiff's substantive claims and the sufficiency of the complaint, favor default judgment against defendant RDH for violating Section 553 and converting plaintiff's property. However, the factors weigh against any default judgment against defendant Holmes or on alleged violations of Section 605.

### C. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176–77; *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). In its motion for default judgment, plaintiff seeks a total judgment of $201,800 against the defaulted defendants plus almost $3,000 in attorney fees and costs. 2d Mot. Default J., at 3. Given the large sum at stake, this factor could weigh against the entry of default judgment. *See, e.g., Cardoze,* 2010 WL 2757106, at *5 ("a large sum of money at stake would disfavor default damages," such as a request for $114,200 in damages); *Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 WL 3239281,

---

[6] Under Oregon law, members of an LLC are not held personally liable for the torts of the LLC unless they participate directly in the tortious conduct. *Cortez v. Nacco Material Handling Grp., Inc.*, 337 P.3d 111, 119 (Or. 2014). A plaintiff may pierce the corporate veil to hold an individual LLC member accountable, but this is an "extraordinary remedy" requiring that a plaintiff prove several elements. *State ex rel. Neidig v. Superior Nat. Ins. Co.*, 173 P.3d 123, 131, 135 (Or. 2007); *see Jacobson*, 874 F. Supp. 2d at 1014. Plaintiff has not done so here.

at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved"). As discussed below, however, the Court declines to recommend judgment in the amount requested. Consequently, the fourth *Eitel* factor does not weigh against a default judgment. *See Machuca*, 2014 WL 1330658, at *5 (if court declines to recommend judgment in the amount requested, the fourth Eitel factor does not weigh against plaintiff); *Cardoze*, 2010 WL 2757106, at *5.

### D. Factor Five: The Possibility of a Dispute Concerning Material Facts

The fifth factor, the possibility of a dispute concerning material facts, weighs in favor of default judgment when the claims in the complaint are well-pleaded. "Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005); *Machuca*, 2014 WL 1330658, at *5; *Martin*, 2014 WL 2159280, at *5. Here, as discussed above, plaintiff's claims against defendant RDH for a Section 553 violation and conversion are well-pleaded. However, plaintiff fails to allege facts sufficient to establish defendant Holmes' individual liability for any of the claims. The Court finds this factor favors a default judgment against defendant RDH but not defendant Holmes.

### E. Factor Six: Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor inquires whether the defendant's default might have resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, there is no evidence of excusable neglect on defendants' part. Joe Hand properly served defendants with pleadings twice and also

served them two times with a motion for entry of default. Defendants received ample notice of plaintiff's intent to pursue a default judgment against them. Nonetheless, they have not filed anything in response or otherwise made an appearance in this case. Accordingly, this factor does not weigh against default judgment.

### F. Factor Seven: Policy Favoring Decisions on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, courts have consistently concluded "that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Promotions, Inc. v. Machuca*, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014)*; see PepsiCo*, 238 F. Supp. 2d at 1177; *see also Elektra Entm't Grp.*, 226 F.R.D. at 393. Where defendants have failed to appear or respond in a given matter, a decision on the merits is impossible. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Elektra Entm't Grp.*, 226 F.R.D. at 393. Here, given that defendants have not responded or otherwise appeared, the sixth *Eitel* factor does not weigh against default judgement.

In sum, the factors articulated in *Eitel* do not support default judgment on the Section 605 claims or against defendant Holmes. Based on analysis of the factors, the Court recommends granting default judgement against defendant RDH Entertainment on the Section 553 and conversion claims

## II. Plaintiff's Damages

The Court now turns to plaintiff's request for $201,800 in damages. Specifically, plaintiff seeks $50,000 from each of the two defendant for violations of Section 605; $50,000 from each defendant for violations of Section 553; and $900 from each defendant for the tort of conversion. 2d Mot. Default J., at 3. As explained above, the Court does not recommend granting default judgment on the Section 605 claims or the claims against Holmes. Accordingly, the Court considers only plaintiff's claims against RDH for $50,900 in combined Section 553 and conversion damages. As stated above, even after entry of default, plaintiff must prove its damages.

### A. Section 553 Damages

Under Section 553, a plaintiff may recover either actual damages or statutory damages ranging from $250 to $10,000 "as the court considers just." 47 U.S.C. § 553(c)(3)(A). The statute also provides for enhanced damages. If "the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages" by as much as $50,000. 47 U.S.C. § 553 (c)(3)(B). In other words, the maximum amount statutory and enhanced damages a plaintiff can recover for a violation under Section 553 is $60,000. *See Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136, 1137 (S.D. Cal. 2009).

District courts in the Ninth Circuit consider a variety of factors in determining the amount of statutory damages for a violation of Section 553 or 605. "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, 2011 WL 1642306, at *2 (N.D. Cal.

May 2, 2011); *Joe Hand Promotions, Inc. v. Ho*, 2009 WL 3047231, at *1 (N.D. Cal. Sept. 18, 2009); *Garden City Boxing Club, Inc. v. Zavala*, 2008 WL 3875272, at *1 (N.D. Cal. Aug. 18, 2008). In determining enhanced damages for willfulness and financial gain, courts have considered evidence of a cover charge, premium food and drink prices, advertisements, the number of patrons in attendance, and repeated offenses, among other factors. *Lone Star Cafe & Pub*, 2013 WL 587662, at *2; *J & J Sports Prods., Inc. v. Parayno*, 2013 WL 942528, at *2 (N.D. Cal. Mar. 11, 2013); *J & J Sports Prods., Inc. v. Concepcion*, 2011 WL 2220101, at *4 (N.D. Cal. Jun.7, 2011).

Here, plaintiff seeks $50,000, close to the maximum allowable damages under Section 553. Plaintiff urges the Court to disregard the aforementioned factors that courts within the Ninth Circuit have considered. 2d Mot. Default J. Ex. 3, at 8 (Mem. P. & A.) Rather, plaintiff bases its arguments for $50,000 in damages on the principle of deterrence and a district court case from the Southern District of Texas– a case in which the court only awarded $15,000. 2d Mot. Default J. Ex. 3, at 9 (Mem. P. & A.) (citing *Entm't by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002)). Plaintiff cites cases with high damage awards from West Virginia, Texas, and other distant jurisdictions, but fails to cite an award anywhere near $50,000 for a single violation of either Section 503 or 605.[7] Plaintiff even acknowledges that it seeks an "unconventional" amount

---

[7] Plaintiff cites: *Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2*, 172 F. Supp. 2d 810, 812 (S.D.W. Va. 2001) (awarding $8,750 in statutory and enhanced damages); *Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107 (E.D.N.Y. 1997) (awarding $8,750); and *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490-91 (S.D.N.Y. 1999)(awarding $3,000 against one establishment, $12,000 against another one, and $8,000 against a third one). 2d Mot. Default J. Ex. 3, at 10 (Mem. P. & A.). Plaintiff also cites a handful of cases within the Ninth Circuit, but again the awards do not

of damages, but justifies the request as necessary to deter piracy. 2d Mot. Default J. Ex. 3, at 13 (Mem. P. & A.). The Court finds plaintiff's arguments unconvincing.

The facts of this case simply do not support an award of $50,000. Following the traditional approach of calculating statutory damages, the Court considers the profits and losses resulting from the act of piracy. Defendants' business did not collect a cover charge and plaintiff does not allege any increase in food and drink prices on the night the program was aired. Plaintiff indicates that the restaurant's cost to legally license UFC 111 would have been $900. 2d Mot. Default J., at 3. Accordingly, the Court finds that $900 is a just amount of statutory damages. As for enhanced damages, those require a showing that defendants committed piracy both "willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553 (c)(3)(B). The Court agrees with plaintiff that "[b]ased on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events," it would be a virtual impossibility for RDH to have accidentally intercepted the UFC 111 broadcast. 2d Mot. Default J. Ex. 3, at 10 (Mem. P. & A.). Moreover, plaintiff's investigator submitted as evidence a March 26, 2010 printout of the Bob's Steak N' Spirits Facebook page, advertising that the restaurant would be showing the UFC fights the next night. 2d Mot.

---

come close to $50,000. Plaintiff cites *Entm't by J & J, Inc. v. Montecinos*, 2002 WL 1735384, at *2 (N.D. Cal. July 25, 2002) (awarding $6,000 in statutory and enhanced damages where the venue charged a cover and promoted the event); *Joe Hand Promotions, Inc. v. Dailey*, 2003 WL 1342998, at *3 (N.D. Cal. Mar. 13, 2003) (awarding $7,000 in statutory and enhanced damages); *Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215, at *3 (N.D. Cal. Aug. 17, 1999) (awarding $6,000 in statutory and enhanced damages). 2d Mot. Default J., at 8-9 (Mem. P. & A.). It is notable that despite an abundance of recent on-point cases in district courts within the Ninth Circuit, plaintiff relies on a small number of cases that are more than a decade old.

Default J. Ex. 2, at 4-6 (Schell Aff.). Even if defendant RDH could provide innocent explanation for advertising an unlicensed broadcast, it forfeited the opportunity to defend its conduct when it failed repeatedly to respond to summonses and complaints. The Court concludes that defendant acted willfully. As for the purposes of financial gain, the investigator reported restaurant was quite crowded during the preliminary under-card bout, with about 80 people present in a venue with a capacity of no more than 100. 2d Mot. Default J. Ex. 2, at 2 (Schell Aff.). Although RDH advertised on its Facebook page, it does not appear to have engaged in the sort of extensive promotion that would merit maximum enhanced damages. Moreover, defendant appears to be a first-time offender. Defendant RDH's conduct merits enhanced damages but not the excessive amount sought by plaintiff. District courts have awarded far less in similar cases. *See, e.g., Concepcion*, 2011 WL 2220101, at *4 (awarding $2,200 cost of sublicense and $1,000 in enhanced damages against establishment with 60-person capacity and more than 50 attendees); *J & J Sports Prods., Inc. v. Juanillo*, 2010 WL 5059539, at *1-3 (N.D. Cal. Dec. 6, 2010) (awarding $2,000 cost of sublicense and $500 in enhanced damages where first-time offender broadcast to 100 people in a 150-person capacity restaurant); *Lone Star Cafe & Pub*, 2013 WL 587662, at *3 (awarding $3,200 in statutory damages but declining to award any enhanced damages where conduct was willful but small venue did not advertise or charge cover or higher prices); *Garden City Boxing Club, Inc. v. Lan Thu Tran*, 2006 WL 2691431, at *2-3 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages and $5,000 in enhanced damages when 40 patrons were present and a $10 cover charge was imposed). In the interest of deterrence, the Court recommends awarding $1,000 in enhanced

damages, in addition to the $900 in statutory damages.  Thus, total damages under Section 553 would be $1,900.

## B. Conversion Damages

In an action for conversion under Oregon law, plaintiffs are entitled to compensatory damages equal to converted property's market value at the time of conversion. *Hall v. Work,* 354 P.2d 837, 842 (Or. 1960); *State v. Wise,* 946 P.2d 363, 366 (Or. Ct. App. 1997).  Here, in the motion for default judgment, plaintiff seeks $900 for conversion.  2d Mot. Default J., at 3.  However, plaintiff submitted a contradictory affidavit from Joe Hand, claiming that the market value of a license at the time of conversion was $1,100.  2d Mot. Default J. Ex. 1, at 3, 9 (Hand Aff.).  The Court has doubts as to the accuracy of the affidavit as plaintiff has already corrected crucial errors in the document, including a misstatement that Bob's Steak N' Spirits collected a cover charge and a statement that Nyssa is a "major city."  2d Mot. Default J., at 1.  Accordingly, the Court concludes the error rests with the affidavit, and that conversion damages should be $900.

## C.  Plaintiff's Attorney Fees

Unlike Section 605, Section 553 does not automatically grant reasonable attorney's fees and costs to a prevailing party.  *See* 47 U.S.C. § 605(e)(3)(B)(iii).  As explained above, this Court declines to apply Section 605 without more evidence as to the means used to intercept the broadcast, and only applies Section 553.  The relevant portion of that Section 553 provides that a court "may," but is not required to, "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 553(c)(2)(C).  Here, plaintiff seeks $2,250 in

attorney's fees and $712.71 in costs, but does not provide an affidavit of attorney's fees and costs or any other necessary documentation. 2d Mot. Default J., at 3.[8] Accordingly, the Court does not recommend the award of costs or attorney's fees.[9]

## RECOMMENDATION

For the above reasons, Plaintiff's Motion for Default Judgment (Doc. #30) should be GRANTED IN PART and DENIED IN PART. The Court recommends granting the motion for default judgment against defendant RDH Entertainment, LLC on the Section 553 and conversion

---

[8] Even if plaintiff had filed the required documentation of its fees and costs, it is doubtful plaintiff could justify almost $3,000 in fees and costs in this case. The Court is "wary of granting unreasonable fees for similar work done in . . . virtually identical cases where seemingly boiler-plate pleadings are utilized." *Backman*, 102 F. Supp. 2d at 1199; *J & J Sports Prods., Inc. v. Ro*, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19, 2010); *see Joe Hand Promotions, Inc. v. Be,* 2011 WL 5105375, at *7 (N.D. Cal. Oct. 26, 2011) (declining to award attorney's fees where errors revealed cookie-cutter filings slightly altered and reused from other cases); *Streshly*, 655 F. Supp. 2d at 1139 ("[T]he Court will not ... indulge Plaintiff's attempt to obtain the biggest judgment it can by filing cookie-cutter pleadings that trivialize the particular facts of this case and ignore the voluminous case law that reveals its requested judgment [of $100,875] to be so wildly out of the question"). Here, plaintiff's filings mistakenly include what appear to be facts from another case. For example, the sworn affidavit of Joe Hand refers to Nyssa, Oregon as a "major metropolitan area" and misstates that defendants received a cover charge from patrons to see the fights. 2d Mot. Default J. Ex. 1, at 6 (Hand Aff.). The affidavit claims the sublicense fee for UFC 111 was $1,100 but the motion for default judgment seeks only a reimbursement of $900. *Id.* at 3,9 (Hand Aff., Fee List); 2d Mot. Default J., at 3. Plaintiff rightly alerts the Court to some of these errors. 2d Mot. Default J., at 1. Nonetheless, the errors underscore the boilerplate nature of plaintiff's filings and cast doubt on plaintiff's unsupported claims for attorney's fees.

[9] In similar cases, other courts have declined to award claims for attorney's fees and costs without documentation and support. *See, e.g., Joe Hand Promotions, Inc. v. Williams*, 2011 WL 6012483, at *5 (E.D. Cal. Dec. 1, 2011); *Joe Hand Promotions, Inc. v. Mannor*, 2012 WL 113792, at *7 (E.D. Cal. Jan. 13, 2012); *J & J Sports Prods., Inc. v. Sorondo*, 2011 WL 3917391, at *6 (E.D. Cal. Sept. 6, 2011).

claims. The remaining claims, the Section 605 claims and the claims against defendant Robert Dean Holmes, should be DISMISSED. A total of $2,800 in damages should be awarded as follows:

$900 statutory damages for violation of 47 U.S.C. § 553;

$1,000 enhanced damages for violation of 47 U.S.C. § 553; and

$900 in compensatory damages for conversion under Oregon law.

## SCHEDULING ORDER

The above Findings and Recommendations will be referred to a United States District Judge for review. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

IT IS SO ORDERED.

DATED this  16th   day of July 2015.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge